# PHILIP LARMON

## *v.*

# THOMAS M. JORDAN.

1.  CONTRACTS — *proposition to sell* — *of its withdrawal and acceptance* A written proposition for the sale of land, without consideration, and not under seal, wherein the time of acceptance is limited, may be withdrawn by the party making it at any time before acceptance; who would not be bound by an acceptance not within the time limited, unless he assented in his turn.

2.  And where no time is limited the law fixes a reasonable time, to be determined by the circumstances of the case. Then the inquiry as to a reasonable time resolves itself into an inquiry as to what time it is rational to suppose the parties contemplated; and the law will decide this to be that time which as rational men they ought to have understood each other to have had in mind. The proposition, to be binding, must be accepted within such reasonable time.

3.  If the party making the offer revokes the same at any time before its acceptance, and deals with the property in a manner inconsistent with a willingness to continue the offer, then the presumption that the *aggregatio mentium* necessary to a contract occurred, does not arise.

4.  When the time is limited, by the offer, during which it is to continue, then, if without any previous revocation the offer is accepted, the presumption of a meeting of minds would be conclusive, simply because the offer is presumed to have been renewed during every moment of the time limited, which signifies the assent of the vendor, and the acceptance that of the vendee.

5.  So, if no time be limited, the offer, in the absence of evidence to the contrary, will be presumed to have been continued every moment during a reasonable time and no longer; and, if there is no acceptance within a reasonable time, there can be no presumption of a meeting of minds, because there can be none of a continuance of the offer to the time of acceptance.

6.  CLOUD UPON TITLE — *what constitutes.* Where a written proposition for the sale of lands, without consideration and not under seal, was delivered by the owner thereof to another, but which offer of sale was not accepted by the latter so as to be binding upon the former, and the vendee afterward wrote upon the same an acceptance of the offer, and caused the proposal and acceptance to be recorded in the recorder's office of the county

in which the land was situated, in violation of a pledge to the contrary and in fraud of the rights of the vendor, the instrument, as it stood upon the record, was regarded as a cloud upon the title of the latter, which upon bill filed for the purpose by the vendor against the vendee and his assignee, who had notice of the premises, a court of chancery would take jurisdiction to remove.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

This was a bill filed by appellee against appellant and Tooke, in the Superior Court of Chicago, on the 3d day of August, 1869, to remove a cloud upon the title of appellee's land.

Bill alleges appellee's seizin in fee simple; that on the 22d January, 1869, Tooke, representing that he was agent of the Rock River College Association, and as such being about to purchase lands in the vicinity of those in question, obtained from appellee a proposition for sale of his lands as follows:

"CHICAGO, January 22, 1869.

"I will sell to M. M. Tooke, Sup't. Rock River College Association, the W. ½ of S. E. ¼ of section 21, 38, 14 south of R. I. Junction, for $500 per acre, ¼ cash, balance 1, 2 and 3 years, with interest 8 per cent. I further agree to wait until May 1, 1869, for first payment by purchaser giving bond with approved security for payment with interest 8 per cent as above."

"T. M. JORDAN."

The bill further alleges that Tooke, at that time, requested appellee to give him ten days' refusal upon those terms, which appellee refused to do, but did tell him that if within the next ten days after that date he received an offer to purchase the premises, he would advise Tooke of it before selling.

That appellee saw Tooke almost daily for ten days, and the latter did not notify him of any acceptance, but, on the 30th January, 1869, they met, and by mutual consent the proposition was abandoned, and on the 1st of February, 1869, appellee

contracted to sell an undivided half of the premises to another party, and on the 10th of the same month appellee had bound himself to grant five acres of the same premises to Cook county, for the purposes of a Normal school; that on the eighth same month the Park bill passed one branch of the legislature, and was expected to pass the other branch, which would greatly enhance the value of these premises; that on the seventeenth same month, Tooke offered to pay appellee $100 and take a contract for the land, which appellee declined, and declared the former proposal abandoned. On the eighteenth same month, Tooke wrote under the proposal given as aforesaid, "The above proposal accepted, and notice given February 18, 1869."

          "M. M. TOOKE."

And afterward, on the twenty-sixth of March, caused the proposal and acceptance to be recorded in the recorder's office of Cook county, wherein the land was situate.

Tooke then assigned the contract to appellant, but who, it is alleged, had notice of the premises. Prayer that supposed contract might be declared null and void, and as a cloud upon the title, removed, and for general relief.

Appellant and Tooke answered. Replications to answers filed and cause heard upon pleadings, proofs and exhibits, and decree in favor of appellee, for the special relief prayed. The cause was thereupon brought to this court by appeal.

Mr. E. W. EVANS, for the appellant.

Mr. MILTON T. PETERS, for the appellee.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

The instrument of the 22d of January, 1869, was but a simple proposition for a sale, without consideration, and not under seal.

If the proposer had limited the time for acceptance, as in the case of *The Boston & Maine Railroad* v. *Bartlett*, 3 Cush.

224, relied upon by appellant's counsel, still by that, as well as the general current of authorities, he would be at liberty to withdraw the offer at any time before acceptance, and, if not accepted within the time limited, he would not be bound unless he assented in his turn.     Here no time was limited.     The law therefore fixes a reasonable term, to be determined by the circumstances of the case.

" If the proposer fixes a time, he expresses his intention, and the other party knows precisely what it is.     If no definite time is stated, then the inquiry as to a reasonable time resolves itself into an inquiry as to what time it is rational to suppose the parties contemplated ; and the law will decide this to be that time which, as rational men, they ought to have understood each other to have had in mind."     1 Pars. on Cont. 405, 406.

Appellee testified, that some seven or eight days after he made the proposition in question, Tooke called on and requested him to take stock in the college enterprise to the amount of $10,000; that he declined taking it, whereupon Tooke said that he had not received the encouragement to which he was entitled, from those owning property in that vicinity, and that he would abandon the whole project, and, as appellee says, to use Tooke's own words, " let it go by the board." That appellee replied that he was sorry he did not receive such encouragement, but that he, appellee, could not help it, and that *that* would end the matter between them, and in this respect appellee is corroborated by the evidence of two other witnesses.     Tooke, in his evidence, admits having the interview at that time, and states that he said he had not received the encouragement that he expected in the sale of the stock and that he might have to give it up, " meaning," as he says, " the stock plan of the college," but he denies that he said that he would abandon the purchase of the land.

On cross-examination, he gives the language used by him on that occasion :     " I said that I had not received the encouragement I had expected in regard to the sale of stock, and I did not know but that I would have to give it up."     He does not

deny that appellee thereupon said, that *that* should end the matter between them; but says he did not hear it, which is but the negative evidence of one witness standing against the affirmative statements of three. If appellee revoked the offer before acceptance within a reasonable time, it is immaterial whether Tooke abandoned the purchase or not. The right of revocation did not depend upon his acquiescence.

No acceptance at the time in question, or at any time anterior to the acceptance supposed by the act of writing one on the paper, February 18, 1869, is pretended. If appellee did, in fact, declare a revocation of the offer on the 30th of January, as he claims, and on the 1st of February thereafter dealt with the property in a manner inconsistent with a willingness to continue the offer, then the presumption that the *aggregatio mentium* necessary to a contract herein occurred, is countervailed by the evidence.

But, disregarding that evidence entirely, then how does the case stand? When the time is limited, by the offer, during which it is to continue, then, if without any previous revocation the offer is accepted, the presumption of a meeting of minds would be conclusive, simply because the offer is presumed to have been renewed during every moment of the time limited, which signifies the assent of the vendor and the acceptance that of the vendee. So, if no time be limited, the offer, in the absence of evidence to the contrary, will be presumed to have been renewed every moment during a reasonable time and no longer. If, therefore, there be no acceptance within a reasonable time, there can be no presumption of a meeting of minds, because there can be none of a continuance of the offer to the time of acceptance.

At the time the proposition was made, circumstances existed, and were known to both parties, which made the property offered peculiarly liable to fluctuation in value. It is not rational to suppose that men of ordinary understanding and prudence would contemplate the continuance of an offer of this kind, under the circumstances of this transaction, for so

long a period as twenty-seven days. Indeed, the clear preponderance of the evidence is, that Tooke endeavored to get an extension of it for ten days, but appellee refused to give it.

Though the question as to what is a reasonable time for the continuance of such an offer may often be a difficult one to determine, yet we are satisfied that, under the circumstances here, it was not within the contemplation of the parties that the offer should continue for so long a period as elapsed before the supposed acceptance. It follows, from this view, that, even disregarding the evidence of revocation, there was no offer pending at the time of the supposed acceptance, and, therefore, there is no presumption of a meeting of the minds of the parties requisite to a contract. No action at law could be maintained upon it, nor would a court of equity compel specific performance of it as a contract.

Still, there can be no question but the instrument, as it stands upon record, constitutes a cloud upon appellee's title, and there is as little doubt that it was placed there in violation of a pledge to the contrary, and in fraud of appellee's rights. The jurisdiction of chancery in the premises is clear. The decree of the court below is fully supported by the evidence, and must, therefore, be affirmed.

*Decree affirmed.*